UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ILEANA MARGARITA ALAMO,

     Plaintiff,

v.                             Case No:  6:15-cv-735-Orl-DNF

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

**OPINION AND ORDER**

     Plaintiff, Ileana Margarita Alamo, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal a Joint Memoranda (Doc. 20) setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.**  **Social Security Act Eligibility**

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on September 29, 2011, alleging disability beginning July 12, 2011. (Tr. 139, 153, 213-31, 265). Plaintiff's applications were denied initially on November 8, 2011, and upon reconsideration on March 29, 2012. (Tr. 155-56, 171, 172-76). A hearing was held before Administrative Law Judge Robert Droker (the "ALJ") on September 5, 2013. (Tr. 94-120, 180). On October 24, 2013, the ALJ issued his decision finding that Plaintiff was not under a disability. (Tr. 70-87). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on April 2, 2015. (Tr. 1-7). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on May 8, 2015. The parties having filed a joint memorandum in support of their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2011, the alleged onset date. (Tr. 75). At step two, the ALJ found that Plaintiff had the following severe impairments: learning disorder; borderline intelligence quotient; affective disorder; schizoaffective disorder; disorders of the liver; disorders of the spine; disorders of the knee; and morbid obesity. (Tr. 76). At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 76).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. She needs to avoid ladders and unprotected heights. She must avoid operation of heavy moving machinery. She needs a low stress work environment with no production line. She needs simple, repetitive tasks. She needs to avoid contact with the public and needs limited contact with her coworkers; she must not to use a coworker in order to complete the task. She can occasionally bend, crouch, kneel, stoop but needs to avoid squatting or crawling.

(Tr. 78). At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as an order clerk. (Tr. 85). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically the jobs of "marker," "cleaning-housekeeping," "addresser," and "cutter/paster-press clippings." (Tr. 86). The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 12, 2011, through the date of the decision, October 24, 2013. (Tr. 87).

## II.  Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to apply the correct legal standards to the opinions of Plaintiff's treating physician, Dr. Rivera; and (2) whether the ALJ erred by failing to fully and fairly develop the record. The Court will address each issue in turn.

**(a) Whether the ALJ erred by failing to apply the correct legal standards to the opinions of Plaintiff's treating physician, Dr. Rivera.**

Plaintiff argues that the reasons the ALJ gave for according Dr. Rivera's opinions little weight were not supported by substantial evidence and are not based on the correct legal standards. (Doc. 20 p. 19).  Plaintiff contends that the ALJ cherry-picked the evidence, disregarding evidence that supported Dr. Rivera's opinions.  (Doc. 20 p. 19).  Plaintiff argues that the ALJ improperly substituted his judgment for that of a medical expert and that the ALJ's reasons for rejecting Dr. Rivera's opinions were conclusory and not supported by substantial evidence.  (Doc. 20 p. 20).

In response, Defendant argues that the ALJ provided good reasons, supported by substantial evidence, for giving little weight to the opinions of Dr. Rivera.  (Doc. 20 p. 22). Defendant contends that the ALJ properly considered the length of the treatment and the frequency of examination, as well as that Dr. Rivera's opinions were not supported by his own records.  (Doc. 20 p. 22).  Further, Defendant argues that Plaintiff's daily activities and the other medical evidence of record were also inconsistent with the extreme limitations opined by Dr. Rivera.  (Doc. 20 p. 24-27).

The Court finds it helpful to review the evidence as it pertains to Dr. Rivera.  The record indicates that Plaintiff presented to Edmundo I. Rivera, M.D., for an initial appointment on May 26, 2011.  (Tr. 521-22).  Dr. Rivera noted that Plaintiff's appearance was well groomed, her attitude was cooperative, her motor activity was antalgic, her mood was sad, her affect was appropriate, and her speech was normal.  (Tr. 521).  Dr. Rivera checked off "attention" and "concentration", but it is unclear from the form what this indicated.  (Tr. 521).  He noted that Plaintiff's thought processes were intact, and her thought content was within normal limits.  (Tr. 521).  However, Dr. Rivera also indicated that Plaintiff had obsessive thoughts.  (Tr. 521).  His diagnoses included major depressive disorder, recurrent, severe; rule out bipolar disorder, not otherwise specified;

attention deficit disorder, learning disorder; borderline intellectual capacity; and he assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 41 to 50. (Tr. 522). Dr. Rivera's treatment plan was to begin a trial of medication and provide supportive, interpersonal therapy, and Plaintiff was to follow-up in three weeks. (Tr. 522).

On June 13, 2011, Plaintiff returned to Dr. Rivera for a follow-up appointment. (Tr. 520). Plaintiff reported that during her first few days on medicine she was very talkative but at that time was more even. (Tr. 520). She reported that she had "a pattern of having a switch that when turned on she gets extremely irritable to the point that [she] blank[s] out." (Tr. 520). Dr. Rivera noted the closest diagnosis was intermittent explosive disorder in addition to depression and anxiety. (Tr. 520). Dr. Rivera also diagnosed bipolar disorder, not otherwise specified. (Tr. 520). He prescribed a trial of Equetro and instructed Plaintiff to follow-up in three to four weeks. (Tr. 520).

On August 22, 2011, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported that she had lost her job in June 2011 due to lies that people said about her. (Tr. 519). She reported that she had recently experienced a major panic attack. (Tr. 519). Dr. Rivera noted that her mood was dysphoric and her affect was appropriate. (Tr. 519). Dr. Rivera also noted Plaintiff's thought process was linear, her thought content was relevant, and she denied suicidal thoughts. (Tr. 519). His assessment was bipolar disorder, not otherwise specified and panic disorder with attacks. (Tr. 519). Dr. Rivera increased Plaintiff's dosage of Equetro for increased mood control, added Cymbalta for her depression, and added Ativan for her anxiety. (Tr. 519).

On October 13, 2011, Plaintiff returned to Dr. Rivera for a follow-up appointment accompanied by her mother and reported that she lost her job in July and her home had recently been robbed. (Tr. 518). Plaintiff also stated she had not been able to get unemployment. (Tr. 518). Dr. Rivera noted that Plaintiff was presently tearful and appeared rather depressed. (Tr.

518).  Her mother reported that even at an early age, Plaintiff had recurrent depression.  (Tr. 518).
Plaintiff's mother also stated Plaintiff had episodes where she would say that she saw things.  (Tr.
518).  Plaintiff reported that she tried Fluoxetine, but that did not work; Cymbalta made her sleep
for three days; and Equetro made her sleepy.  (Tr. 518).  Dr. Rivera noted Plaintiff denied suicidal
thoughts or plan and had no overt psychosis.  (Tr. 518).  Dr. Rivera continued her trial of Viibryd
and added Lamictal for mood stabilization.  (Tr. 518).  Dr. Rivera instructed Plaintiff to follow-up
in three weeks. (Tr. 518).

On December 11, 2011, Plaintiff returned to Dr. Rivera for a follow-up appointment and
reported that she had been experiencing anxiety attacks.    (Tr. 533).  She reported that she was
under significant stress and her home was robbed in September (Tr. 533).  Dr. Rivera noted that
she seemed to be very paranoid or largely afraid that someone is coming into her home.  (Tr. 533).
Plaintiff reported that she felt like someone was calling.  (Tr. 533). Dr. Rivera noted her mood was
depressed, her affect was appropriate, her thought process was linear and goal directed, and her
thought content was relevant.  (Tr. 533). Dr. Rivera opined there was "no current evidence of
thought disorder." (Tr. 533). Dr. Rivera assessed Plaintiff with major depressive disorder versus
bipolar disorder, not otherwise specified; obsessive compulsive disorder traits, and personality
disorder, not otherwise specified.  (Tr. 533). Dr. Rivera noted he would switch Plaintiff to Prozac,
add Abilify, and prescribed Xanax to take as needed for her anxiety.  (Tr. 533). Dr. Rivera also
instructed Plaintiff to follow-up in three to four weeks.  (Tr. 533).

On December 14, 2011, Dr. Rivera completed a Mental Residual Functional Capacity
assessment for Plaintiff.   (Tr. 527-529). Dr. Rivera checked boxes indicating Plaintiff had
moderate limitations in her "ability to remember locations and work-like procedures", "ability to
understand and remember very short and simple instructions", and "ability to carry out very short

and simple instructions." (Tr. 527). Dr. Rivera checked boxes indicating Plaintiff had marked limitations in all other mental areas. (Tr. 527-528). Dr. Rivera opined that Plaintiff had "borderline intellectual capacity, overall functional capacity is impaired, difficulty responding to any perceived stress." (Tr. 529).

On January 12, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported that she had a nice, uneventful holiday. (Tr. 532). She reported that she had been feeling a little better and calmer, but she still experienced good and bad days. (Tr. 532). Plaintiff mentioned that three days before the appointment she was supposed to go to a hearing about the robbery of her house. (Tr. 532). Plaintiff discussed recent family issues and how she was coping. (Tr. 532). Dr. Rivera opined that Plaintiff's mood was somewhat brighter and her affect was appropriate with a linear thought process and relevant thought content. (Tr. 532). Dr. Rivera assessed Plaintiff's mood as more stable, noted Plaintiff complained of daytime drowsiness, added a trial of Focalex for attention deficit disorder, and noted he would refer her for a sleep study. (Tr. 532).

On March 21, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported difficulty sleeping. (Tr. 627). She reported that the only way she slept was if she took two Xanax. (Tr. 627). Plaintiff stated she heard voices at night that sounded like whispering and saw shadows. (Tr. 627). She further reported that she did not feel like doing anything. (Tr. 627). Plaintiff told Dr. Rivera that her Medicaid had been taken away because she got unemployment. (Tr. 627). Dr. Rivera noted that Plaintiff was tearful during the session, and she reported experiencing stress at home and feeling anxious the past two weeks. (Tr. 627). Dr. Rivera increased Plaintiff's Xanax to help her sleep, added a medication to address anxiety, and noted he would consider prescribing mood a stabilizer. (Tr. 627).

On March 21, 2012, Dr. Rivera completed a Mental Residual Functional Capacity assessment for Plaintiff.  (Tr. 563-65). Dr. Rivera checked boxes indicating Plaintiff's "ability to understand and remember very short and simple instructions" and "ability to carry out very short and simple instructions" were moderately limited.  (Tr. 563). Dr. Rivera checked boxes indicating Plaintiff had marked limitations in all other mental areas.  (Tr. 563-64). Dr. Rivera provided no narrative explanation on the assessment.  (Tr. 563-65). There was a discrepancy on the form.  (Tr. 564). Dr. Rivera indicated Plaintiff had a marked limitation in her "ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 564). However, Dr. Rivera also checked off that there was no evidence of this limitation.  (Tr. 564).

On April 5, 2012, Dr. Rivera completed a Mental Residual Functional Capacity assessment for Plaintiff.  (Tr. 569-71).  Dr. Rivera checked boxes indicating Plaintiff was markedly limited in all mental areas.  (Tr. 569-570). He noted that Plaintiff had "a long history of employment attempt[s and] failures due to recurring symptoms, as well as a borderline intellectual capacity. Has not been able to function outside of a supportive environment."  (Tr. 570).

On April 23, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported that she still was not stable.  (Tr. 626). She reported that she did not think it was the medication, but she thought it was the situation.  (Tr. 626). Plaintiff reported that she was constantly angry and "basically wishing" she was not alive.  (Tr. 626).Plaintiff discussed her recent family issues with Dr. Rivera.  (Tr. 626). Dr. Rivera added Wellbutrin to Plaintiff's medications, stated they would continue to address conflicts and coping, and instructed Plaintiff to follow-up in four weeks.  (Tr. 626).

On May 29, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported that the Wellbutrin had helped some, but she still experienced good days and bad days. (Tr. 625). She reported some psychosocial factors that affected her mood, and she reported that she still was not sleeping at night. (Tr. 625). However, Plaintiff admitted she was able to sleep at night when taking Xanax. (Tr. 625). Plaintiff also stated she was trying to stay away from extended family problems. (Tr. 625). Dr. Rivera opined that Plaintiff's mood overall was more stable, her affect was appropriate, her thought process was linear, and her thought content was relevant. (Tr. 625). Dr. Rivera noted Plaintiff denied suicidal thoughts or plan. (Tr. 625). Dr. Rivera also noted he would maintain Plaintiff's Wellbutrin, continue Xanax for anxiety and sleep, and he instructed Plaintiff to follow-up in two months. (Tr. 625).

On July 30, 2012, Plaintiff returned to Dr. Rivera and reported she had been doing fair. (Tr. 624). Plaintiff also reported feeling tired and anxious and stated everything was fine with her bloodwork. (Tr. 624). Dr. Rivera noted Plaintiff was tearful after her brother gave her money that day and Plaintiff stated that was the first time her brother ever helped. (Tr. 624). Plaintiff stated she was frustrated and did not have "too many outlets." (Tr. 624). Dr. Rivera noted he discussed Plaintiff's frustrations and that her mood had been anxious. (Tr. 624). Dr. Rivera observed that Plaintiff's thought process was linear, her thought content was relevant and appropriate. (Tr. 624). Dr. Rivera assessed that Plaintiff presented with depressive symptoms and anxiety. (Tr. 624). Dr. Rivera started Plaintiff on a trial of Lexapro. (Tr. 624).

On November 16, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported that she felt tired constantly. (Tr. 623). She further reported experiencing chronic back pain. (Tr. 623). Dr. Rivera noted that Plaintiff's mood was brighter, her affect was appropriate, her thought process was linear, and her thought content was relevant. (Tr. 623). She discussed

issues with her four year old son.  (Tr. 623).  Dr. Rivera also noted Plaintiff "appears to be handling stressors better."  (Tr. 623).  He kept her medications the same, noted "provide supportive therapy," and instructed her to follow-up in two to three months.  (Tr. 623).

On December 12, 2012, Plaintiff returned to Dr. Rivera for a follow-up appointment.  (Tr. 622). Plaintiff reported her son was extremely hyperactive and constantly getting into trouble.  (Tr. 622). Dr. Rivera opined that Plaintiff's mood was predominately euthymic, her affect was appropriate, her thought process was linear and her thought content relevant.  (Tr. 622). Overall Plaintiff was managing and denoted some increased anxiety.  (Tr. 622).  Dr. Rivera noted Plaintiff's focus was on her son and his "misadventures" and that Plaintiff reported anxiety because of living alone and raising her son on her own.  (Tr. 622). Dr. Rivera instructed Plaintiff to follow-up in two to three months.  (Tr. 622).

On March 27, 2013, Plaintiff returned to Dr. Rivera for a follow-up appointment and reported feeling very depressed and crying all the time.  (Tr. 621). Plaintiff stated she felt like a hoarder and had difficulty throwing away things that she should.  (Tr. 621). Plaintiff reported that if she felt like there was something missing with her, she felts despair and ate a lot more but nothing filled her up.  (Tr. 621). Dr. Rivera noted that her mood was predominately dysphoric and she had been feeling that way the last two weeks, but she denied suicidal thoughts or plan.  (Tr. 621). His impression was recurrent depression, rule out bipolar disorder not otherwise specified, and panic disorder.  (Tr. 621). Dr. Rivera added a trial of Pristiq to address her depression.  (Tr. 621).

On June 26, 2013, Plaintiff returned to Dr. Rivera for a follow-up appointment and stated she had been very moody.  (Tr. 620). Plaintiff also reported needing help with her mortgage since she had not been able to find a "good decent job."  (Tr. 620). However, Plaintiff had been decorating and posting pictures on Facebook.  (Tr. 620). Plaintiff and Dr. Rivera also discussed

her morbid obesity.  (Tr. 620). Dr. Rivera opined that Plaintiff's mood was presently euthymic,

her affect was appropriate, her thought process was linear, her thought content was relevant and

appropriate.  (Tr. 620). In his assessment, Dr. Rivera noted: "will work on diet and nutrition [,]

appetite suppressant and work on mood symptom."  (Tr. 620).

In his decision, the ALJ summarized Dr. Rivera's findings and opinions.  The ALJ found

that

> As noted above, the limitations offered by Dr. Rivera are not supported by
> his internal office visit notes.  From May 2011 until June 2013, the
> claimant discussed some changes in her life but she did not report any
> extreme symptoms.  Only minor adjustments were made in her
> medications and she continued to see Dr. Rivera on a periodic schedule.
> In the beginning she saw him on a monthly basis for several months but
> then she began seeing him every other month and by 2013 the intervals
> between visits were over three months.  During this period the claimant
> did not receive any emergent psychiatric treatment (Exhibits B6F, B9F,
> B20F).

(Tr. 82).  The ALJ further explained that he found that Dr. Rivera's "opinion was less persuasive

because it lacked evidentiary support and was clearly inconsistent with other evidence, including

the claimant's own statements and reports to the state agency, as well as the doctor's internal

reports.  Accordingly, the undersigned has given Dr. Rivera's opinion little weight.  (Tr. 82).

"The Secretary must specify what weight is given to a treating physician's opinion and any

reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786

F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever

a physician offers a statement reflecting judgments about the nature and severity of a claimant's

impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite

his or her impairments, and the claimant's physical and mental restrictions, the statement is an

opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.

*Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011).  Without such a

- 13 -

statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ showed good cause, supported by substantial evidence, for according "little weight" to Dr. Rivera's opinions. The ALJ noted that Dr. Rivera's opinions were not supported by his own records. *See* 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). The ALJ explained that from May 2011 to June 2013, Plaintiff discussed some changes but did not report any extreme symptoms. (Tr. 82, 518-22, 535-38, 620-27). The ALJ noted that Dr. Rivera made only minor adjustments to Plaintiff's medication during this time and did not receive any emergent psychiatric care. (Tr. 82, 518). The ALJ properly considered the length of Plaintiff's treatment relationship and the frequency of examination, noting that Plaintiff saw Dr. Rivera on a periodic schedule, changing from seeing him originally on a monthly basis to every other month and, finally, to intervals of over three months by 2013.

The ALJ discussed how Dr. Rivera's notes continued to state that Plaintiff's affect was appropriate and her thought content was relevant, with no recurrent evidence of thought disorder.

(Tr. 81, 519, 521). In October 2011, Dr. Rivera noted that Plaintiff had "no overt psychosis," in December 2011, that there was "no current evidence of thought disorder," and in January 2012, that Dr. Rivera noted that Plaintiff reported feeling "a little better and calmer." (Tr. 532). In November 2012, Dr. Rivera opined that Plaintiff appeared "to be handling stressors better." (Tr. 623).

The Court rejects Plaintiff's claim that the ALJ cherry-picked the evidence to support his conclusion. By the Court's estimation, the ALJ completed a thorough analysis of the medical records and opinions from Dr. Rivera. The ALJ explained his reasons for according "little weight" to Dr. Rivera's opinions and these reasons were supported by such relevant evidence as a reasonable person would accept as adequate support to his conclusion. Accordingly, the Court will affirms the ALJ's finding as to this issue.

**(b) Whether the ALJ erred by failing to fully and fairly develop the record.**

Plaintiff argues that the ALJ erred by failing to fully and fairly develop the record because the ALJ did not send Plaintiff for a consultative mental evaluation. (Doc. 20 p. 32). Plaintiff explains that her representative did not request the Commissioner to send her for a consultative mental evaluation because the evidence submitted by Dr. Rivera proved that she was disabled. (Doc. 20 p. 32). Plaintiff contends that the ALJ erred by according the opinion of non-examining state agency psychologist Dr. Alvarez-Mullin some weight because her opinion was given without the benefit of Dr. Rivera's treatment records. (Doc. 20 p. 30-31).

Defendant responds that the ALJ fulfilled his obligation to develop a full and fair record because the ALJ had sufficient evidence to support his determination that Plaintiff was not disabled. (Doc. 20 p. 33). Further, Defendant argues that the ALJ properly relied upon Dr. Alvarez-Mullin's opinion. (Doc. 20 p. 34).

Because a hearing before an ALJ is not an adversary proceeding, an ALJ has a duty to fully and fairly develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). This duty exists even when a claimant is represented at the hearing by counsel. *See, e.g., Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). If an ALJ does not have sufficient evidence to determine whether a claimant is disabled, or if after weighing the evidence cannot reach a conclusion about whether the claimant is disabled, the ALJ may recontact a medical source. *See* 20 C.F.R. § 416.920b(c)(1). Likewise, the regulations provide that an ALJ "may" order a consultative examination to try to resolve an inconsistency in the evidence of when the evidence as a whole is insufficient to support a determination or decision. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b). However, an ALJ is not required to order a consultative examination when the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). Although the ALJ has a duty to develop the record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, the Court finds that the ALJ did not err by failing to fully and fairly develop the record, as the ALJ had sufficient evidence to support his determination that Plaintiff was not disabled. Contrary to Plaintiff's suggestion, the ALJ did not base his decision solely on Dr. Alvarez-Mullin's opinion to find Plaintiff not disabled. The ALJ's decision makes it clear that he considered medical records from Florida Hospital Fish Memorial Emergency Department, Family Practice of West Volusia, and Community Medical Center of West Volusia, and considered Plaintiff's own disability reports and testimony. (Tr. 79-85).

In addition, contrary to Plaintiff's argument, the ALJ did not "wholesale adopt" Dr. Alvarez-Mullin's mental limitation findings.  Comparing the findings of Dr. Alvarez-Mullins to the ALJ's RFC finding shows that the ALJ determined that Plaintiff had greater limitations than Dr. Alvarez-Mullin's opined.  For example, while Dr. Alvarez-Mullin found Plaintiff's ability to be aware of normal hazards and take appropriate precautions as not significantly limited, the ALJ determined Plaintiff needed to avoid ladders and unprotected heights and must avoid operation of heavy moving machinery. (Tr. 78, 135).  Again, while Dr. Alvarez-Mullin found that Plaintiff's ability to interact appropriately with the public was not significantly limited, the ALJ determined that Plaintiff needed to avoid contact with the public.  (Tr. 78, 135).  As one final example, Dr. Alvarez-Mullin found Plaintiff's ability to ask simple questions or request assistance and her ability to get along with coworker or peers without distracting them or exhibiting behavioral extremes was not significantly limited, the ALJ determined Plaintiff needed limited contact with her coworkers and must not use a coworker to complete tasks.  (Tr. 78).  The fact that the ALJ found limitations greater than Dr. Alvarez-Mullin, whose opinion was accorded "some weight," shows that the ALJ's RFC finding was based upon all the evidence of record, and not a rubber-stamp of a state agency psychological evaluator's opinion.

In essence, Plaintiff contends that the ALJ failed to develop the record because the ALJ accorded "some weight" to a state agency psychological consultant while giving less weight to Plaintiff's treating psychologist.  Where, as here, an ALJ shows good cause for discounting a treating physician's opinion, the Court sees no error in an ALJ's decision to subsequently give "some weight" to a state agency psychologist.  As a state agency psychological consultant, Dr. Alvarez-Mullin's opinion was entitled to great weight if supported by the evidence of record.  *See* 20 C.F.R. § 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ's reliance on Dr. Alvarez-Mullin's

opinion, as well as other medical evidence of record, is substantial evidence supporting the ALJ's RFC finding.  Plaintiff has failed to show that her due process rights were violated by the ALJ. Accordingly, the Court affirms the ALJ's decision.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 19, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties